UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

CRIMINAL NO. MJ-04-M-224

UNITED STATES

v.

YVELISSE A. GONZALEZ RODRIGUEZ

**ORDER ON DETENTION**

ALEXANDER, M.J.

On May 24, 2004, the defendant, YVELLISE A. GONZALEZ RODRIGUEZ ("Ms. Rodriguez"), appeared before this Court for an initial appearance pursuant to a complaint charging her with knowing and intentional importation of heroin in violation of 21 U.S.C. § 952(a). The defendant returned to court on May 27, 2004 for a hearing on probable cause and detention.

At that hearing, Assistant United States Attorney Maureen Hogan represented the government. Attorney John Cicilline represented Ms. Rodriguez. The government moved for detention pursuant to 18 U.S.C. §§ 3142 (f)(1)(C) (the offense carries a potential sentence of ten or more years imprisonment pursuant to the Controlled Substances Act), and (f)(2)(A) (serious risk of flight). To establish probable cause and support its motion for detention, the government presented the testimony and affidavit of Special Agent Eric B. LaForte of the Bureau of Immigration and Customs Enforcement ("ICE") currently working in ICE's Boston drug smuggling group. Agent LaForte's

credible testimony includes the averments articulated below.

Ms. Rodriguez arrived at Logan International Airport in Boston, Massachusetts on Friday, May 21, 2004 at approximately 1:30 a.m. on flight number 0049 from Montego Bay, Jamaica. U.S. Customs officials determined that she was returning to the United States from Curacao, and that she departed Boston for Curacao on May 15, 2004. Ms. Rodriguez made the trip using a Dominican passport issued three days prior to leaving Boston.

Upon questioning at the airport by U.S. Customs officials, Ms. Rodriguez provided "inconsistent" answers, acted "evasive[ly]," and appeared "nervous." She consented, in writing, to being X-rayed, and was taken to Whidden Memorial Hospital in Everett, Massachusetts for the procedure. An X-ray of her stomach identified sixty "pellets" therein, which she later admitted to swallowing while in Curacao in order to bring heroin into the United States. A test conducted after Ms. Rodriguez passed the first seventeen pellets indicated the presence of heroin, and the defendant was then arrested. Agents estimated the total weight of the heroin (without packaging) to be between 500 and 600 grams.

After the defendant's arrest, Boston police obtained consent from her mother to a search of defendant's room.[1] Though no drugs were found therein, police did find two

---

[1] Ms. Rodriguez's mother lives in the same apartment.

additional Dominican passports in the defendant's name.[2] Examination of the three passports (those found in the defendant's home and the one she carried when arrested) indicated that Ms. Rodriguez made seven trips out of the country since September 2003. Using alternating passports, she traveled four times to the Dominican Republic, twice to Curacao, and once to Saint Maarten. The government avers that Ms. Rodriguez's possession and alternating use of three passports indicates both that she is concealing the quantity of trips she takes out of the United States, and that she has connections outside this country.

After considering Agent LaForte's testimony and cross-examination by defense counsel, the Court concludes that this testimony and the supporting affidavit are credible. The Court FINDS that there is PROBABLE CAUSE that Ms. Rodriguez knowingly and intentionally smuggled heroin into the United States in violation of 21 U.S.C. § 952(a). The Court now turns to the issue of detention.

Pursuant to the Bail Reform Act of 1984, this Court shall detain a criminal defendant pending trial upon a determination that "no condition or combination of conditions will reasonably assure the appearance of the person as required and the safety of any other person and the community..." 18 U.S.C. § 3142 (e); United States v. Montalvo-Murillo, 495 U.S. 711, 716-17 (1990). "With regard to risk of flight as a basis

---

[2] Ms. Rodriguez is a citizen of the Dominican Republic and permanent resident of the United States.

3

for detention, the Government must prove by a preponderance of the evidence that no combination of conditions will reasonably assure the defendant's appearance at future court proceedings." United States v. DiGiacomo, 746 F. Supp. 1176, 1180-81 (D. Mass. 1990). Regarding the question of flight risk, the burden of persuasion remains with the Government. *See* DiGiacomo, 746 F. Supp. at 1181, *citing* United States v. Jessup, 757 F. 2d 378, 381-82 (1st Cir. 1985).

The requirement is different on the issue of whether the defendant poses a danger to the community. The Government must prove by clear and convincing evidence that no combination of conditions will reasonably assure the safety of any other person and the community. United States v. Chimurenga, 760 F.2d 400 (2d Cir. 1985). The meaning of clear and convincing evidence does not imply that the judge be "plumb sure" that there is no set of conditions that will protect the public, but the judge should be "pretty sure." United States v. Gray, 651 F. Supp. 432 (W.D. Ark. 1987), *aff'd*, 855 (8th Cir.), *cert. denied*, 488 U.S. 866 (1988).

However, in cases (such as the one at bar) involving violations of the Controlled Substances Act, 21 U.S.C. § 801 *et seq.*, for which the defendant may be imprisoned for ten or more years, there is a rebuttable presumption that there is "no condition or set of conditions [that] will reasonably assure the appearance of the person and the safety of any other person and the community." 18 U.S.C. § 3142 (e). This rebuttable presumption shifts the burden of production, but not the burden of persuasion, to the defendant. *See*

4

Jessup, 757 F.2d at 381. The rebuttable presumption reflects Congress' belief that narcotics traffickers possess the resources and contacts to flee to other countries, and that they pose particular risks of recidivism if released pending trial. United States v. Arroyo-Reyes, 32 F.3d 561, 1994 WL 440654, *3 (1st Cir. 1994) (Table) (per curiam), *citing* United States v. Palmer-Contreras, 835 F.2d 15, 17 (1st Cir. 1987) and United States v. Williams, 753 F.2d 329, 335 (4th Cir. 1985). *See also* United States v. Portes, 786 F.2d 758, 765 (7th Cir. 1985). Nevertheless, because of the interference of pre-trial detention with the "importan[t] and fundamental...right" of liberty, United States v. Salerno, 481 U.S. 739, 750 (1987), this Court will not make such a finding lightly. The Court's independent analysis regarding detention is governed by the rubric set forth in 18 U.S.C. § 3142 (g).

First, the Court considers the nature and circumstances of the offense charged against Ms. Rodriguez. There is no evidence suggesting a violent nature to this alleged act of drug importation. However, Ms. Rodriguez is charged with importing a large quantity of heroin, a drug with a highly destructive capacity. The Court takes seriously such acts of drug importation, especially given the quantity of heroin and the international scope of the alleged criminal activity.

Second, the Court evaluates the weight of the evidence against Ms. Rodriguez. In the instant case, there is sufficient evidence to establish probable cause, and Agent LaForte's testimony inculpates the defendant in a violation of 21 U.S.C. § 952 (a). An X-

ray identified pellets in Ms. Rodriguez's stomach, at least one of which tested positive for heroin after being passed by the defendant at the hospital. Furthermore, Ms. Rodriguez admitted to having swallowed pellets containing heroin while in Curacao with the intention of smuggling the narcotic into the United States. Ostensibly, law enforcement personnel recovered and maintained the evidence taken from Ms. Rodriguez in the hospital. The Court concludes the evidence here is not insignificant.

The Court's final inquiry regards the history and characteristics of the defendant. Though Ms. Rodriguez is a citizen of the Dominican Republic, she is a permanent resident of the United States and lives in Dorchester, Massachusetts with her three minor children. Her four siblings live in the greater Boston area, and her mother is living with the defendant and her three children.[3] These facts evidence significant family ties and ties to the District.

Ms. Rodriguez indicates that she was employed as a cleaner at the time of her arrest. There is no suggestion before the Court that Ms. Rodriguez has a medical, mental health, or substance abuse problem. Her prior criminal record is relatively minor. There is no overt indication that Ms. Rodriguez is violent.

In light of her limited criminal history and ties to the District, the Court has considered carefully the defendant's motion for release. However, the Court concludes that there is no condition or set of conditions that would guarantee Ms. Rodriguez's

---

[3] Ms. Rodriguez lives in a public housing unit. Her mother is not named on the lease.

6

appearance or the community's safety were she released pending trial. The Court is mindful of the (f)(1)(C) presumption and congressional belief that international drug trafficking may provide a means and incentive for the defendant to flee prior to trial. Arroyo-Reyes, *supra*; Palmer-Contreras, *supra*.

The Court is concerned not only that Ms. Rodriguez may return to activities that pose a danger to the community, but also that she poses a significant danger to herself.[4] Ingesting heroin as this defendant did may be lethal, and it is apparent that she does not understand the magnitude of the risk to her own life created by such activity or that she is willing to undertake such risks despite her awareness of the dangers posed.

More importantly, the Court has determined that the proposed third party custodian, the defendant's mother, is not suitable. The defendant's mother was interviewed by the Pretrial Services Office on or about May 27, 2004. Given that she resides in the defendant's public housing unit, which the defendant herself would not be able to occupy if she was released due to the nature of the charges against her, it is unclear where residence may be maintained. The proposed third party custodian also has mental health issues that may prevent her from fulfilling her obligations as custodian.

In light of the foregoing, and considering the penalties Ms. Rodriguez faces (including deportation after imprisonment), and the presumption of detention articulated

---

[4] 18 U.S.C. § 3142 (g) (4) states that "the nature and seriousness of the danger to any person or the community" is a factor to be considered when deciding if conditional release is appropriate. Although the Court does not render an opinion of statutory interpretation here, it notes that "any person" may include the defendant herself.

in 18 U.S.C. § 3142, the Court concludes by clear and convincing evidence that YVELISSE GONZALEZ RODRIGUEZ poses a danger to the community and by a preponderance of the evidence that she poses a serious risk of flight that cannot be vitiated by any condition or combination of conditions of release. Accordingly, the Court ORDERS the defendant, YVELISSE GONZALEZ RODRIGUEZ, be detained pending trial.

Further, pursuant to 18 U.S.C. § 3142 (i) it is ORDERED that:

1. The defendant be, and hearby is, committed to the Custody of the Attorney General for confinement in a corrections facility, separate, to the extent practicable, from persons awaiting or serving sentences or being held in custody pending trial.

2. The defendant be afforded reasonable opportunity for private consultation with her counselor; and

3. On Order of a court of the United States or on request of an attorney for the government, the person in charge of the corrections facility in which the Defendant is confined shall deliver her to an authorized Deputy United States Marshall for the purpose of any appearance in connection with a court proceeding.

Review of this Order may be obtained by the Defendant's filing of a motion for revocation or amendment of the order pursuant to 18 U.S.C. § 3145 (b).

SO ORDERED.

_6/10/04_
Date

_Joyce P.C. QQ___
United States Magistrate Judge